UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JASON MORANO, AVIN SAMTANI, KYLE          Civil Action No.
O'KEEFE, MUNIRAM BOODRAM, JOHN         1:10-cv-02192-VM
YURKOVICH, JODI RICCIARDI, MATTHEW
PUCCIO, and JEREMY LASACCO, Individually,
and on Behalf of All Others Similarly Situated.

        Plaintiffs,

    v.

INTERCONTINENTAL CAPITAL GROUP, INC.,
RICHARD STEINBERG, ROBERT TUZZO,
KOLA LULGJURAJ, and DUSTIN DIMISA,

        Defendants.

-----------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DECERTIFY</u>

# Table of Contents

INTRODUCTION ............................................................................................................... 1

PROCEDURAL HISTORY................................................................................................. 2

FACTUAL BACKGROUND ............................................................................................. 4

ARGUMENT ...................................................................................................................... 8

I. THE CLASS FAILS TO SATISFY THE HEIGHTENED SCRUTINY STANDARD IMPOSED AFTER THE CLOSE OF DISCOVERY FOR FINAL CLASS CERTIFICATION ................................................................................................. 8

II. THE CLASS PLAINTIFFS ARE SEEKING TO REPRESENT IS IMPROPER............ 10

A. Disparate Factual and Employment Settings Associated With Decentralized Operations at Different Work Locations Under Different Management Render Class Treatment Improper.................................................................................................. 10

B. The Existence of Individuated Inquiries Precludes Final Certification of the  Class .... 14

C. Fairness and Judicial Economy Require Individual Litigation ..................................... 20

III. CONSOLIDATION OF PLAINTIFFS' INDIVIDUAL CLAIMS FOR TRIAL IS INAPPROPRIATE................................................................................................. 22

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Allen v. Bd. of Pub. Educ. for Bibb County,* 495 F.3d 1306, 1319 (11th Cir. 2007) .................... 15

*Anderson v. Cagle's Inc.*, 488 F.3d 945, 954 (11th Cir. 2007) ........................................................ 9

*Anglada v. Linens 'n Things, Inc.*, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. 2007) ..................... 12

*Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634, *22 - 23 (S.D.N.Y. 2007)............. 17

*Barfield v. New York City Health & Hosps. Corp.*, 2005 U.S. Dist. LEXIS 28884, *3 (S.D.N.Y. 2005) ......................................................................................................................................... 10

Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 12441, *8 (E.D. La. 2004)................... 13

*Bayles v. American Medical Response of Colorado,* 950 F.Supp. 1053, 1067 (D. Colo.1996) ..... 9

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 105302 (W.D.N.C. 2011) ................................................................................................................................................. 13

*Bogosian v. All Am. Concessions*, 2008 U.S. Dist. LEXIS 78625, *19 (E.D.N.Y. 2008)............ 12

*Bond v. National City Bank of Pennsylvania*, 2006 U.S.Dist. LEXIS 41876, *7 - 8 (W.D.Pa. 2006) ......................................................................................................................................... 11

*Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992) ...................................... 22

*Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 569 (N.D.Ala. 1995)................. 9

*Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972).................................... 15

*Castro v. Spice Place, Inc.*, 2009 U.S. Dist. LEXIS 7678, *7 (S.D.N.Y. 2009) .......................... 10

*Colozzi v. St. Joseph's Hospital Health Center*, 595 F.Supp. 2d 200, 207 (N.D.N.Y. 2009) ...... 10

*Dudley v. Texas Waste Systems, Inc.,* 2005 U.S. Dist. LEXIS 9168 (W.D. Tex. 2005)............... 17

*Epps v. Oak Street Mortgage, LLC,* 2006 U.S. Dist. LEXIS 31896 (M.D. Fla. 2006)................. 17

*Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 464 (S.D.N.Y. 1977).............................. 22

*Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414-15 (9th Cir. 1981) ...................... 15

*Francis v. A & E Stores, Inc.*, 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. 2008)............................ 8

*Frye v. Baptist Memorial Hospital*, 2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. 2010)............ 18

*Gorey v. Manheim Servs. Corp.*, 2010 U.S. Dist. LEXIS 141868 (S.D.N.Y. 2010) .................... 19

*Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 729 F.Supp. 2d 1038, 1076 (S.D.Iowa 2010) ......................................................................................................................................... 15

*Heagney v. European Am. Bank.*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)..................................... 10

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ........................................... 10

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007)......................... 8

*Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007) .............................. 9

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990) .... 23

*Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1361 (2d Cir. 1975)............................................ 22

*King v. CVS/Caremark Corp.*, 2008 U.S. Dist. LEXIS 108614, *2-5(S.D. Fla. 2008)............... 17

*Ledbetter v. Pruitt Corp.*, 2007 U.S. Dist. LEXIS 10243 (M.D. Ga. 2007) ................................ 18

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ............................................ 8

*Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 370 (D.N.J. 1987).......................................................... 9

*Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 367 - 68 (S.D.N.Y. 2007) .................. 8

*MacAlister v. Guterma*, 263 F.2d 65, 70 (2d Cir. 1958)............................................................... 22

*MacGregor v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 80361, *3 (D.S.C. 2011)................ 13

*Mancuso v. Florida Metropolitan University, Inc.*, 2010 U.S. Dist. LEXIS 140404, *15 (S.D.Fl. 2010) ......................................................................................................................................... 16

*Morales v. Plantworks, Inc.*, 2006 U.S. Dist. LEXIS 4267, *5 - 6 (S.D.N.Y. 2006) ................... 10

*Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) ......................................... 15

*Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282-283 (N.D. Tex. 2008) .......... 17

*Reed v. County of Orange*, 266 F.R.D. 446, 463 (C.D. Cal. 2010) ............................... 17

*Saleen v. Waste Management, Inc.,* 649 F. Supp. 2d 937 (D. Minn. 2009)................................. 17

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 389 (W.D.N.Y. 2005)................................................. 19

*Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170-171 (W.D.N.Y. 2007)................................. 15

*Simmons v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 5002, *6 (S.D. Tex. 2007)................. 13

*Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1083 (D.Kan. 1998)...................... 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2554 (2011) ...................................... 13

*Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011)................................... 9

## INTRODUCTION

Defendants InterContinental Capital Group, Inc. ("ICG"), Richard Steinberg, Kola Lulgjuraj, and Dustin Dimisa (collectively, "Defendants")[1] hereby move for the decertification of the class of opt-in Fair Labor Standards Act (hereinafter, "FLSA") Plaintiffs (hereinafter, the "Class") that has been conditionally certified pursuant to 29 U.S.C. §216(b). The Class here includes various Plaintiffs that are not similarly situated insofar as significant differences exist with respect to the time-keeping and payment practices applicable to each putative Class member, and the exempt/non-exempt status of Plaintiffs, leading to fundamental differences in the nature of their claims, the necessary proof to support the varied claims, the applicable defenses, and the applicability of counterclaims. *See*, Chart of Putative Class Members (hereinafter, "Chart")[2], which is contained in the Joint Appendix at Appx. 1 - 8. Indeed, some putative Class members supervised and directed other Plaintiffs and some putative Class members were classified as exempt, while others were classified as non-exempt. Some putative Class members recorded time on timesheets -- others did not -- and still others recorded time they now concede was false. Most of the putative Class members routinely submitted timesheets reflecting that they worked only 40 hours per week, while others reported overtime on their timesheets. As set forth below, the disparities do not end with the manner and method of pay and recording of hours and/or the nature of the loan officers' duties -- which rendered some of them exempt.

---

[1] This Motion is not being filed on behalf of Defendant Robert Tuzzo, who has substituted new counsel for the undersigned as counsel of record in this matter.

[2] Defendants have prepared the Chart as a summary means of organizing the voluminous and specific factual information pertaining to each putative member of the Class's employment with ICG. The Chart itself contains specific references to the Joint Appendix, which contains support in the record for the summary information contained in the Chart.

In fact, many of the loan officers signed employment agreements significantly impacting their obligations regarding matters relevant to this case.   Indeed, for those who signed an employment agreement, the agreement specifically required loan officers to submit timesheets accurately reporting their time.   Moreover, to the extent certain Plaintiffs who submitted timesheets now alleged to have been falsified, these same loan officers verified on each timesheet that the time reported was accurate.   Furthermore, these employment agreements (to the extent they apply to specific Plaintiffs) specifically required that overtime be approved in writing in advance, and required the loan officers to indemnify ICG for violating all of the above provisions. The hodgepodge of duties, manner and method of pay, and applicable obligations and responsibilities, and the issues concerning exempt/non-exempt status, result in incongruous claims involving different burdens of proof, different defenses, and in some cases the facts give rise to counterclaims applicable to only some members of this class.

As set forth in the Chart, the Court will need to figure out dizzying combinations of which loan officers were managers, which loan officers signed agreements, which were paid a salary, and which falsified timesheets, accurately reported hours, and/or did not submit time records. Each of these factors carry and result in distinguishable legal principles applicable to claims, defenses and counterclaims.   Accordingly this Class -- which the Court expressly reserved for review at this time -- should be decertified.

## PROCEDURAL HISTORY

Plaintiffs Jason Morano, Avin Samtani, Kyle O'Keefe, Muniram Boodram, John Yurkovich, Matthew Puccio, and Jeremy Lasacco (collectively, the "Named Plaintiffs") were first sued by ICG in state court for breaches of their employment agreements, as well as breaches of their fiduciary duties to ICG, for violating various non-compete provisions by taking certain

2

clients and trade secrets with them upon their voluntary termination of employment with ICG. Only thereafter did the Named Plaintiffs file a complaint on March 12, 2010 seeking recovery for alleged violations of state and federal overtime and minimum wage laws.  The Named Plaintiffs seek to represent the Class, which they have defined to include "any employee who is or has been, at any time within the past three (3) years, employed by Defendants as a loan officer." Thereafter, without benefit of any briefing as to the propriety of the class at its outset, this Court conditionally certified the Class on October 28, 2010.  *See*, ECF No. 52; *see also*, ECF No. 55. In granting the Order conditionally certifying the Class, the Court noted that it would "address any problems with the broadness of the class at the final certification stage." *See*, ECF No. 52 at p. 2.

The discovery period in this matter has concluded, providing Plaintiffs approximately two years to obtain some, or any, evidence in support of final class certification.  Yet, discovery in this matter has yielded undisputed facts evidencing the diverse and disparate nature of the putative members of the Class and their claims for relief under the FLSA.  Defendants submit that Named Plaintiffs' evidence is insufficient to meet the heightened standard applied to 29 U.S.C. § 216 (b) class certification at this stage of the case and, as a result, the Class should be decertified.  Specifically, putative members of the Class are not similarly situated because critical distinctions exist amongst such individuals with respect to legally significant facts such as the nature of each individual Plaintiff's claims, supervisory/exempt/non-exempt status, time-keeping practices, the manner in which the employee was paid, the diverse practices and policies the employee was subjected to as a result of differences in location and applicable management, and the existence of signed employment agreements impacting time keeping obligations, method

of payment, and indemnification obligations owed by certain Plaintiffs to ICG for falsely reporting their time.

## FACTUAL BACKGROUND

The Class, as conditionally certified, contains employees that worked at no fewer than seven different branches of ICG (Manhattan, Smithtown, Garden City, Melville, Pennsylvania, Massachusetts, and Arizona) in four different states.  Appx. 1 - 8.  Each of these branches was supervised by a different manager.  *See*, Appx. 176 - 182.  The branch managers operated with autonomy and were able to hire their own loan officers as well as develop their own operating practices.  Appx. 177, 183; *see also*, Appx. 24, 26, 33 - 35, 62 - 63, 70 - 73, 111 - 112.  Moreover, the management of the employees at each branch was further diversified through the use of "Team Leaders."  For example, in Manhattan, Named Plaintiffs Jason Morano and Avin Samtani were Team Leaders that "ran the show."  Appx. 172 - 173.  These varied differences in supervision are critical, because it was typically the branch manager and/or team leader that would dictate work hours.  Appx. 33 – 35, 174 – 175.  In this respect, loan officers were generally allowed to come and go as they pleased.  Appx. 174 - 175.

With respect to pay practices, some employees were paid a minimum wage and commission on their loans.  Appx. at 1- 8.  Other class members were paid a salary reflecting their exempt status, and received commissions on their loans and overrides on the sales of employees (who are also class members) under their supervision.  Appx. at 1- 8.  This supervision by Named Plaintiffs Jason Morano and Matthew Puccio, it should be noted, apparently included advising another subordinate recruited to join this case, Kyle O'Keefe, to falsify time-records in violation of clearly expressed policies to the contrary.  *See*, Appx. 140 - 144.

In addition to being subject to different employment practices and pay, the putative members of the Class were also subject to different time reporting policies. While ICG distributed standard and pre-populated timesheets that expressly stated, "If LO did not work the schedule or take the scheduled breaks, please indicate all deviations from schedule and initial such changes . . . All Changes should be made by LO in pen, and marked on this sheet," many potential members of the Class never turned in timesheets. *See*, Sample Timesheet, included in the Joint Appendix at Appx. 9; Appx. 1 - 8. Most who turned in timesheets consistently reported they did not work overtime, and of those Class members who were deposed, many were completely at a loss to explain why their time sheets reflect 40 (and in some cases fewer than 40 hours), yet they now claim they worked overtime. Appx. 1 - 8; Appx. 53 - 57, 90, 103 - 104. Moreover, according to Named Plaintiff Puccio, "most people in the company didn't know that you could actually change [timesheets]." Appx. 167.

While it is true that some Class Members (including those who both signed and did not sign such agreements) testified that their managers – including Named Plaintiffs Matthew Puccio and Jason Morano – told them not to report overtime, this was not uniform amongst the Class, nor was it claimed that each manager made such statements. Appx. 1 - 8; Appx. 53 - 57, 90, 103 - 104. In fact, at least twelve employees that have opted into this lawsuit have submitted timesheets reporting overtime hours worked. Appx. 1 - 8. Yet, even those who reported overtime, now claim they worked more overtime than they reported. Moreover, some of the loan officers have an obligation to indemnify ICG for violating these time-keeping practices, as they executed employment agreements containing an indemnification provision. Appx. 1 - 8. Hence, the class literally includes people with differing combinations of the following factors: (i) people who had and did not have an obligation to report time; (ii) people who violated and did not

violate the obligation to report time and/or report time accurately; (iii) people who claim they were told to violate written policies pertaining to time-keeping and those who make no excuse; (iv) people who worked at different ICG branches under different management with different policies; and (v) people who agreed and did not agree to indemnify ICG for violating the time-keeping practices.   Simply put, a jury could never sift through the various combinations to discern the correct legal principles applicable to each discreet group of individuals.

Further complicating the morass of diversity in this Class is the fact that at each location business was originated in a different manner, left up to the applicable branch manager.   *See* Appx. 23, 25, 27 - 28, 33 - 35, 177, 183.   Some branches concentrated on Internet Leads and others focused on direct mail campaigns.   *Id.*   This is critical because the nature of the business would significantly impact the best times to contact potential borrowers.   Whereas internet leads were best suited for communications during evening hours, direct mail campaigns – which ICG mostly relied upon for business – was best suited for communications during work hours.   *Id.* Hence, to the extent Plaintiffs might argue that the nature of the business inherently required evening work – such arguments could only be made with respect to a small subset of the already fractured class.

Moreover, in addition to the time and reporting practices, the putative members of the Class are dissimilar in another important respect as it relates to the FLSA.   Many members of the Class were involved in management.   Deposition testimony revealed that the following Plaintiffs directly supervised other putative members of the Class: Muniram Boodram supervised Jeremy LaSacco (Appx. 17); Mr. Morano and Mr. Samtani supervised many other loan officers in the Manhattan branch (Appx. at 172 - 173); Matthew Puccio supervised Kyle O'Keefe (Appx. at 133); and Laura Rosen supervised Roger Manzano (Appx. at 95, 100 - 101).   This list is in no

way exhaustive as only a fraction of the Class was deposed.  Accordingly, at trial, there will be subclasses of those putative members of the Class based on management including Team Leaders, Senior Loan Officers who's managerial responsibilities have been confirmed by testimony; Senior Loan Officers that may have had managerial responsibility; and Junior Loan Officers.

As a final note, the Class is also sufficiently disparate inasmuch as those putative members of the Class that have been deposed demonstrated only some of the Class had any relationship whatsoever to the individual defendants.  For instance, the majority of the class had no involvement and never even spoke to Kola Lugjuraj and never so much as spoke to Richard Steinberg or even recognized his name.  Only those persons who alleged to have worked under Mr. Tuzzo -- the vast minority of the Class -- acknowledge any recollection of his existence.  *See generally*, Appx. 38, 45 - 46, 51, 134 (showing a lack of knowledge); Appx. 16, 63, 78, 89, 96, 118, 125 - 127, 158 – 161 (showing limited interaction).  Hence, on top of discerning through the above disparities, a jury will need to determine which putative Class members have any basis of any claim against any one of the four individual Defendants.

In light of the foregoing facts, it is evident that the Class fails to satisfy the heightened scrutiny applied following the close of discovery.  Based on these facts, it is evident that the putative members of the Class are not similarly situated because, by their own testimony, they were subjected to disparate factual and employment settings, they are subject to different legal defenses, and procedural difficulties and the risk of prejudice result from collective litigation of these disparate claims.

## ARGUMENT

## I.   THE CLASS FAILS TO SATISFY THE HEIGHTENED SCRUTINY STANDARD IMPOSED AFTER THE CLOSE OF DISCOVERY FOR FINAL CLASS CERTIFICATION

In determining whether an FLSA suit may proceed as a collective action pursuant to Section 216 (b), New York courts employ a two-tiered analysis. *Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 367 - 68 (S.D.N.Y. 2007); *see also, Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007). Once discovery has closed, Plaintiffs are required to satisfy the second step of this inquiry. "The burden is on the named plaintiff to prove that the other employees are similarly situated." *Zivali,* 784 F. Supp. 2d at 460. If the plaintiffs are not similarly situated, "'the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims.'" *Id. quoting Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

This second stage applies a much higher burden, requiring Plaintiff to provide factual evidence in support of class certification. *Francis v. A & E Stores, Inc*., 2008 U.S. Dist. LEXIS 83369 (S.D.N.Y. 2008). In the first step, the court undertakes an examination of plaintiffs' pleadings and affidavits to determine whether they and the other members of the proposed class are sufficiently "similarly situated" to warrant the issuance of notice to all members of the pendency of the suit, and to permit it to proceed as a collective action *through discovery*. *Lynch,* 491 F.Supp.2d at 368. "Plaintiffs' burden [at the first step] is minimal because the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage." *Levy v. Verizon Info. Services Inc.*, 12 Wage & Hour Cas. 2d (BNA) 1373, 2007 U.S. Dist. LEXIS 43223, *9 (E.D.N.Y. 2007). In contrast, "The second phase of an FLSA collective action inquiry occurs after discovery is largely complete . . . At that stage, the similarly situated issue must be revisited, based on the record produced through

discovery." *Masson v. Ecolab, Inc*., 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at **13-14 (S.D.N.Y. 2005).  *See also*, *Parks v. Dicks Sporting Goods*, 2007 U.S. Dist. LEXIS 20949,*3 (W.D.N.Y. 2007) (same); *Ayers v. SGS Control Services, Inc.*, 2007 U.S. Dist. LEXIS 19634, *16 (S.D.N.Y. 2007) ("At the second stage, the court examines the record again, with the benefit of discovery, and revisits the question of whether plaintiffs are similarly situated").

In the second tier analysis, the court reviews several factors, based on the evidentiary record obtained in discovery, including: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations based on the evidentiary record. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007); *accord, Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).  In particular, courts examine whether individualized inquiries and defenses are present that prevent an efficient proceeding with a representative class.  *See, Anderson v. Cagle's Inc.*, 488 F.3d 945, 954 (11th Cir. 2007); *Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1083 (D.Kan. 1998); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 370 (D.N.J. 1987); *Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 569 (N.D.Ala. 1995); *Bayles v. American Medical Response of Colorado,* 950 F.Supp. 1053, 1067 (D. Colo.1996).  A class comprised of claims requiring an individuated inquiry is antithetical to the entire purpose of a class action which is to "achieve economies of time, effort and expense…" *In re Nassau County Strip Search Cases*, 2008 U.S. Dist. LEXIS 29083, *5 - 6 (E.D.N.Y 2008).

Rather, for the proposed class members to be deemed similarly situated there must be a "demonstrable similarity among the individual situations . . . some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular

alleged discrimination." *Colozzi v. St. Joseph's Hospital Health Center*, 595 F.Supp. 2d 200, 207 (N.D.N.Y. 2009) *quoting Heagney v. European Am. Bank.*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988).   Certification of a collective action requires Plaintiffs to demonstrate a common policy, maintained by the defendants, in violation of the FLSA.  *Id.  See also*, *Castro v. Spice Place, Inc.*, 2009 U.S. Dist. LEXIS 7678, *7 (S.D.N.Y. 2009); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997); *Morales v. Plantworks, Inc.*, 2006 U.S. Dist. LEXIS 4267, *5 - 6 (S.D.N.Y. 2006) (denying certification because plaintiffs failed to show "plaintiffs and potential class members were victims of a common scheme or plan that violated the law"); *Barfield v. New York City Health & Hosps. Corp.*, 2005 U.S. Dist. LEXIS 28884, *3 (S.D.N.Y. 2005).  Absent such commonality and in the presence of highly individuated inquiries class certification is wholly inappropriate.

## II.    THE CLASS PLAINTIFFS ARE SEEKING TO REPRESENT IS IMPROPER

The Class Named Plaintiffs seek to represent is improper because of disparate employment settings amongst the Plaintiffs, the inherently individuated inquiry with respect to the applicable defenses, the lack of a common policy in violation of the FLSA, and because fairness and procedural considerations counsel in favor of separate litigation of Plaintiffs' claims.

## A.    Disparate Factual and Employment Settings Associated With Decentralized Operations At Different Work Locations Under Different Management Render Class Treatment Improper

As set forth above, the first factor that courts consider when determining whether a class is similarly situated for purposes of final certification is the "disparate factual and employment settings of the individual plaintiffs." *Jacobs*, 483 F. Supp. 2d at 265.  Where class members work at different locations and are subject to different business practices and policies under the discretion of decentralized management, certification is improper. *Zivali*, 784 F. Supp. 2d at 460.

For example, in *Bayles*, 950 F. Supp. 1053, *supra*, a case relied upon by *Zivali*, the court addressed the question of different managers and practices, finding that "each plaintiff's proof of violation will be individualized because it depends upon how or whether defendant's policy was implemented by individual managers with regard to individual plaintiffs, not what the policy was." *Id.* at 1061. *See also*, *Kuebel*, 643 F.2d at 363; *Reed*, 266 F.R.D. at 463 ("[w]here Plaintiffs' employment environments and factual circumstances differ significantly depending on their assignment and individual supervisor [the fact they are all Sheriff's deputies] falls short of demonstrating that Plaintiffs are similarly situated."). Similarly, in *Bond v. National City Bank of Pennsylvania*, 2006 U.S.Dist. LEXIS 41876, *7 - 8 (W.D.Pa. 2006), the plaintiffs, consisting of bank customer service representatives, contended that they "worked additional uncompensated time, 'pursuant to individual Branch managerial policy' by, among other things, 'being interrupted during their lunch period; traveling between various National City Branches without compensation; not being compensated for travel and all hours expended on mandatory training sessions; and taking work home for which no compensation was given.'" However, the court decertified the proposed class of nationwide customer service representatives, reasoning, "an examination of the claims asserted by the Named Plaintiffs would require a fact-intensive, individualized inquiry of the job position, job duties, work history, and alleged individual branch policies of every prospective plaintiff. In fact, the Named Plaintiffs themselves allege varying circumstances at each branch. Moreover, liability may be found at one location but not another, which would lead to further individual analysis on damages. The diverse nature of the potential class and the unique circumstances of each employee at each branch render conditional class certification inappropriate." *Id.* at 10.

The same reasoning contained in the aforementioned cases is also evident in *Anglada v. Linens 'n Things, Inc.*, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. 2007).  In *Anglada*, this Court considered a request for conditional certification of a nationwide class.  Even at the lenient first stage of the certification analysis this Court limited conditional class certification to the stores at which the single named plaintiff had worked, reasoning that there was a "total dearth of factual support" for a finding that the putative class members were similarly situated.  *Id*. at 15.  In contrast, the Court found affidavits submitted by the employer persuasive of "the individuality of the management and operation practices of LNT stores nationwide."  *Id*. at 17.  Based on these facts, the Court rejected conditional certification.  *See also*, *Bogosian v. All Am. Concessions*, 2008 U.S. Dist. LEXIS 78625, *19 (E.D.N.Y. 2008) (approving conditional certification of a collective action class, but restricting its scope to "individuals who worked in the same location, during the same period, under the same management, and pursuant to the same general policies regarding the hours they worked and how those hours were recorded and compensated");*Guan Ming Lin v. Benthana Nat'l Corp.*, 275 F.R.D. 165, 176 (S.D.N.Y. 2011) (in which this Court again addressed the issue of common employment policies at the more lenient conditional certification stage.  The Court found that there was insufficient evidence of a common practice among delivery persons of all of the defendants restaurants, but rather only a few of the defendant's restaurants.  As a result, this Court noted, "the plaintiffs' submissions do not on their own provide sufficient justification for collective action certification beyond delivery persons who worked at Haru Sake Bar, Haru Third Avenue, or Haru Amsterdam."

Indeed, the problem associated with certifying a class where management and supervision differed among the class is especially significant where the class' claims require finding an unwritten centralized practice or policy inconsistent with the employer's actual

written rules and procedures.  *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 105302 (W.D.N.C. 2011) (refusing to certify an FLSA class where "Defendant's policy requiring compensation for interrupted meal breaks was entirely dependent on decentralized management practices to ensure its enforcement") *citing Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2554 (2011) (noting that a "'policy' of allowing discretion by local supervisors over employment matters" is insufficient to establish the commonality requirement of a class action certification pursuant to Rule 23). "When alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate." *MacGregor v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 80361, *3 (D.S.C. 2011) (internal quotations and citations omitted).  *Simmons v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 5002, *6 (S.D. Tex. 2007) is also instructive. In *Simmons* the court found that that supervisors' independent refusal to upwardly amend overtime hours, which violated the written policy of the employer to pay overtime, did not indicate a common policy or plan of the employer sufficient to satisfy the "similarly situated" standard, even when the employer discouraged employees from working overtime. *See also*, *Basco v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441, *8 (E.D. La. 2004)  (decertifying a class because "various decisions by different supervisors made on a decentralized employee-by-employee basis" did not demonstrate a "single decision, policy or plan" satisfying the "similarly situated" requirement). Hence, even if certain managers engage in actions improper under the FLSA, certification is improper.

Many, but not all, of the claims in this case require a finding that across the seven different branches and seven different supervisors, there was a consistent policy or practice

regarding falsification of time sheets and off the clock work.[3]  Given that ICG had gone to the effort of having employees sign contracts prohibiting unauthorized overtime and requiring accurate time-keeping, and specifically reminded employees on each timesheet of the requirement for accuracy, Plaintiffs have a high threshold of proof to overcome the documented evidence of a company-wide policy compliant with the FLSA.  Indeed, the fact that the few plaintiffs who testified as to any instruction to falsify timesheets almost uniformly attributed such comments to their direct supervisors.  Appx. 64 - 67, 140 - 144.  Moreover, this testimony was isolated to only a few managers.  *Id.*  In addition, the near uniform testimony is that each branch manager and team leader managed loan officers' time differently, and that the business of the branch might result in different time requirements.  Appx. 24, 26, 33 - 35, 177, 183.  All of this, of course, was left entirely up to the discretion of the branch manager, limited by the instruction and rule that – as set forth in the applicable agreements – employees were not to work more than 40 hours and were required to accurately report their time.  Accordingly, even if isolated violations by certain managers could have occurred (a point Defendants do not concede) it would not support class certification.

## B.    The Existence of Individuated Inquiries Precludes Final Certification of the Class

The second factor considered by courts in determining whether a proposed class is sufficiently similarly situated to justify the imposition of final certification is whether "the various defenses available to defendant which appear to be individual to each plaintiff."  *Jacobs*, 483 F. Supp. 2d at 265.  Here, individuated inquiries concerning the employees' off-the-clock claims and the exempt status of class members precludes certification.

---

[3]Of course, certain of the Plaintiffs' claims – to the extent they allege non-payment of overtime consistent with the submitted timesheets and/or to the extent timesheets were not required – would not require this inquiry.

### 1. Disparate Timekeeping Practices Precludes Plaintiffs from Being Similarly Situated

Many – but not all – of the Plaintiffs submitted timesheets showing they did not work overtime. Appx. 1 - 8. Some, but not all, of those Plaintiffs will claim they were told to falsify timesheets. Other loan officer's will claim that Defendants should have known the timesheets were false. Regardless of the ultimate factual outcome, issues pertaining to the accuracy of the timesheets, the reasons for any inaccuracies, and the reasonableness of Defendants' reliance on such timesheets is an individuated inquiry, rendering class treatment inappropriate.

Employers are entitled to rely on the accuracy of the timesheets submitted by employees, unless the Plaintiff was prohibited from accurately reporting time or Defendants were aware that such overtime was worked. *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170-171 (W.D.N.Y. 2007) ("the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in Carrols' records are solely due to the plaintiffs' deliberate failure to accurately report the time they worked"). *Accord*, *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 729 F.Supp. 2d 1038, 1076 (S.D.Iowa 2010) ("Numerous courts have held that an individual is estopped from claiming overtime compensation when he violates an employer's reporting policy and, by so doing, precludes the employer's opportunity to verify and pay, or refute the claim").[4] Accordingly, Plaintiffs are bound by their timesheets unless they can demonstrate that Defendants knew or caused the timesheets to inaccurately reflect the hours actually worked.

---

[4] *See also, Allen v. Bd. of Pub. Educ. for Bibb County,* 495 F.3d 1306, 1319 (11th Cir. 2007) ("There is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it"); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414-15 (9th Cir. 1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of *§ 207(a).*"); *Newton v. City of Henderson,* 47 F.3d 746 (5th Cir. 1995) (noting an employer reasonably relied on employee's time sheets for payroll purposes absent evidence the employer encouraged workers to falsely report their hours); *Brumbelow v. Quality Mills, Inc.,* 462 F.2d 1324, 1327 (5th Cir. 1972) (finding that an employee was estopped from claiming that she had worked hours in excess of those reported on her time sheets).

Obviously this analysis will differ on a Plaintiff by Plaintiff basis.  Questions will include, but not be limited to (i) whether the Plaintiff claims they were told to falsify timesheets and who told them to do so; (ii) whether the Plaintiff executed an agreement specifically requiring time to be recorded accurately; (iii) why and how the Plaintiff could, week after week, submit inaccurate timesheets that specifically required a representation of accuracy; and (iv) whether Defendants had knowledge that the particular Plaintiff's time was accurate.  Indeed, the combination of these inquiries coupled with the fact that Plaintiffs worked in remote locations, recorded time subject to the instructions of at least seven different managers, and submitted time to seven different managers adds yet another layer of individual inquiry to this case.  By way of illustration, facts as to the location of Plaintiff's work, the role and presence of their loan officer, the type of business in which they engaged, what agreements, if any, they signed pertaining to work hours, and what was told to them and by whom are highly specific an individuated inquiries.  Indeed, the mere existence of signed agreements constitutes a valid defense to claims of unpaid overtime.  *Mancuso v. Florida Metropolitan University, Inc.*, 2010 U.S. Dist. LEXIS 140404, *15 (S.D.Fl. 2010) (holding that "written overtime and time records policies" would render a collective action "inefficient").

A case instructive and applicable to the case at bar is *Zivali,* 784 F. Supp. 2d 456, *supra*. Similar to this case, the employees in *Zivali* had testified as to divergent practices with respect to making timesheet adjustments, requesting supervisors to authorize timesheet adjustments, and to the reporting of hours.  *Id*. at 467.  Specifically, the Court noted:

> Some opt-in plaintiffs testified that they understood the [electronic timesheet's] adjustment feature; some acknowledged they regularly received payment for work reported through the adjustment feature; some testified they felt comfortable asking for adjustments while others did not; some admitted that adjustments were promptly made when requested; some testified that they did not

> report time because they did not believe it was compensable; and some conceded that they performed off-duty work for their own benefit without informing management.

*Id.* at 467.  Similarly, in *Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634, *22 - 23 (S.D.N.Y. 2007), the court refused to certify a class based upon allegations "that certain Plaintiffs were pressured by their supervisors to underreport their overtime hours or that their reported overtime hours were (for some other reason) inaccurate.  The disparate nature of the overtime practices precluded Plaintiffs from establishing "that the claim is the product of a 'company-widepolicy.'" *Id.* at *23.  *See also*, *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 282-283 (N.D. Tex. 2008)  (decertifying an FLSA class because of an absence of a company-wide policy prohibiting reporting of overtime hours and disparities amongst class members in overtime hours reported and "the claims and the times they allege they worked off the clock"); *Saleen v. Waste Management, Inc.*, 649 F. Supp. 2d 937 (D. Minn. 2009) (denying conditional certification because employees failed to establish a corporate decision by employer not to follow its formal policy of paying for time worked during meal breaks); *King v. CVS/Caremark Corp.*, 2008 U.S. Dist. LEXIS 108614, *2-5 (S.D. Fla. 2008) (decertifying a class where all class members were subject to nationwide time keeping and payroll system because there were different procedures for inputting time); *Epps v. Oak Street Mortgage, LLC*, 2006 U.S. Dist. LEXIS 31896 (M.D. Fla. 2006) (decertification of a class of loan officers as to off the clock claims); *Dudley v. Texas Waste Systems, Inc.*, 2005 U.S. Dist. LEXIS 9168 (W.D. Tex. 2005) (denying conditional certification in the absence of a company-wide policy violating the FLSA).  *See also, Basco*, *supra*, 2004 U.S. Dist. LEXIS 12441 (denying certification of a proposed FLSA class because only some of the putative members of the class had claimed unpaid overtime); *Reed v. County of Orange*, 266 F.R.D. 446, 463 (C.D. Cal. 2010) (finding that

putative class members were not similarly situated because each plaintiff's "overtime reporting depends heavily on his or her assignment and particular supervisor"); *Frye v. Baptist Memorial Hospital*, 2010 U.S. Dist. LEXIS 101996 (W.D. Tenn. 2010) (decertifying a class in the absence of a common policy with respect to automatic meal break deductions); *Ledbetter v. Pruitt Corp.*, 2007 U.S. Dist. LEXIS 10243 (M.D. Ga. 2007) (denying conditional certification since automatic meal-break deductions are insufficient evidence of a company-wide policy in violation of the FLSA).

Just like the Plaintiffs in *Zivali* and *Ayers*, the issues as to whether the employees' individual timesheets were accurate or false, and if so, why, and whether Defendants could reasonably rely on such timesheets, involve inherently individual claims.   Some Plaintiffs reported overtime and others did not.  Even amongst those Plaintiffs that did not report overtime, some Plaintiffs made handwritten changes to their timesheets while others made no changes whatsoever.  Appx. at 1 - 8.  Some claim they were told to falsify their timesheets and others have no explanation as to why they now claim overtime although their time sheets reflected only 40 hours.  Appx. 53, 64 - 67, 90, 103 - 104, 140 - 144.  Accordingly, Plaintiffs cannot be adjudged to be similarly situated.

### 2.      *The Class includes Exempt Employees*

It is improper to certify a class knowing that its membership includes persons who are not entitled to the relief sought by that class.  *Morisky*, 111 F. Supp. 2d at 498 ("To the extent that any of these employees may be properly classified as exempt, these potential plaintiffs simply are not similarly situated with the named plaintiffs").

As set forth above, at least some of the putative members of the Class are exempt from the requirements of the FLSA because they supervised other loan officers and/or because these

18

employees received annual compensation exceeding $100,000.00 and a weekly salary of at least $455.  *Gorey v. Manheim Servs. Corp.*, 2010 U.S. Dist. LEXIS 141868 (S.D.N.Y. 2010)LEXIS 141868 (S.D.N.Y. 2010) (noting "the Court properly undertakes [the exemption] determination at the second stage, following discovery") *citing Morisky*, 111 F. Supp. 2d at 499 (holding that it was not proper to give final certification to a class that consisted of arguably exempt employees); *see also*, 29 U.S.C. § 213(a)(1); 29 CFR 541.100.  Particularly applicable to this case is *Bond*, 2006 U.S.Dist. LEXIS 41876, *12, where the court found that

> [s]ome prospective plaintiffs had supervisory roles over other prospective plaintiffs regarding timekeeping.  Therefore, an individualized analysis of each supervisor-employee relationship would be necessary.  The potential for intra-class conflicts also raises doubts on the ability of the Named Plaintiffs to adequately represent the class.  In sum, the fact-intensive, individualized nature of the allegations renders class certification inappropriate.

Moreover, even if Plaintiffs argue that these employees are non-exempt, it is the mere litigation of this issue, which applies to a minority of the putative Class members, that will predominate. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 389 (W.D.N.Y. 2005) ("the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated for purposes of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements").  As a result, it cannot be legitimately argued that a class including exempt employees, or even arguably exempt supervisors, is proper.

Several of the Plaintiffs served as supervisors, several of whom have been specifically identified by testimony, and are therefore unable to share in any relief obtained by the Class as a result of the executive exemption to the FLSA.  Appx. at 17, 31, 95, 100 - 101, 133, 172 - 173. In addition, many of the class members include Plaintiffs that may be subject to the highly

compensated exemption.  Accordingly, the mere fact that an arguable basis exists for finding these particular individuals were subject to an applicable exemption precludes certification of this class.

## C.      Fairness and Judicial Economy Require Individual Litigation

The final factor considered is "fairness and procedural considerations based on the evidentiary record." *Jacobs*, 483 F. Supp. 2d at 265.  This Court has previously determined "that fairness and procedural considerations counsel in favor of decertifying the class" where "the evidence points to an extremely wide range of company practices in the context of varied factual and employment settings . . . [and] the defenses available  . . .  appear to be highly individual to each plaintiff." *Zivali*, 784 F. Supp. 2d at 464.

First, litigation of these claims collectively is unlikely to significantly lower costs to Plaintiffs through the pooling of resources. *Jason*, 2011 U.S. Dist. LEXIS 77352 at *13.  For the reasons set forth above with respect to the numerous sub-class issues and individual issues, litigation of these claims in one lawsuit will necessitate litigation of unconnected fact and legal issues.  Moreover, the disparate nature of each individual Plaintiff's claim against Defendants will necessarily increase the cost of the litigation to the extent that the pooling of resources will not offer Plaintiffs a benefit.  In fact, for certain Plaintiffs whose claims might be considered more straightforward, it is likely that their inclusion in this Class has precluded an evaluation of their specific case, which if undertaken, would likely have lead to a resolution.  In other words, the inclusion of certain claims has *undoubtedly* promoted unnecessary litigation with respect to those claims.  For example, at the very outset of this litigation, Defendants consented to the certification of a class of employees who had actually reported overtime – something the Plaintiffs rejected outright. Indeed, if these claims are tried collectively, it is easy to see how

certain Plaintiffs will be disadvantaged by the testimony of their fellow Class members with respect to overtime reporting.

Second, a collective or consolidated litigation of these claims will not result in the efficient resolution of common issues of law and fact and instead will only make litigation of these claims inefficient.  *Id.*  The variety and individuality of the claims and issues involved in this case will require significant testimony and evidence, similar to what would be needed if each case was tried on its own merits.  In other words, nothing is or could be gained in terms of efficiency through class treatment.

Moreover, it will not be possible to coherently manage the Class.  *Jason*, 2011 U.S. Dist. LEXIS 77352 at *13.  Literally, there are dozens of combinations of relevant facts potentially applicable to each Plaintiff.  Appx. at 1 - 8.  Each of these combinations will require different factual burdens to establish a successful claim and will be susceptible to different defenses. Assuming somehow that a jury could keep straight which facts pertained to which Plaintiff, the jury will also need to coordinate which legal arguments are germane to which Plaintiff.  On top of that, the jury will then need to avoid confusion as to which individual Defendants had any relationship to these Plaintiffs.  In short, it is unfathomable that a jury could segregate all of the different relevant fact patterns to the correct Plaintiffs, then apply the correct law to the applicable fact pattern, and then relate it to the proper individual Defendant.  Assuming that was even possible (which it is not), evidentiary issues concerning the admissibility *vel non* as to one group of claims and its prejudicial impact upon other groups of claims, render an appeal of any verdict associated with this type of trial an absolute certainty as admissible evidence pertaining to certain claims will necessarily be inadmissible with respect to other claims.  Coherent management is simply not possible.  Accordingly, this Class should be decertified.

## III.    CONSOLIDATION OF PLAINTIFFS' INDIVIDUAL CLAIMS FOR TRIAL IS INAPPROPRIATE

At a recent hearing before this Court, counsel was asked to also brief the issue as to whether consolidation of the individual claims for trial would be appropriate if the Court is to decertify the Class.  Consolidation is controlled by Federal Rule of Civil Procedure 42(a), which allows for the consolidation of actions if the "actions before the court involve a common question of law or fact."  Second Circuit precedent makes clear that "a party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions."  *MacAlister v. Guterma*, 263 F.2d 65, 70 (2d Cir. 1958).  As an initial matter, Plaintiffs' individual claims do not present common questions of law or fact since, as set forth above, the analysis as to the viability of an individual Plaintiff's claim and the applicability of defenses will be a fact-specific inquiry generating a case by case legal analysis.

Moreover, this Court must examine "the special underlying facts" with "close attention" before ordering a consolidation.  *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1361 (2d Cir. 1975).  In so doing, "consolidation should not be ordered if it would prejudice defendant." *Flintkote Co. v. Allis-Chalmers Corp.*, 73 F.R.D. 463, 464 (S.D.N.Y. 1977).  Accordingly, this Court must be "mindful of the dangers of a streamlined trial process in which testimony must be curtailed and jurors must assimilate vast amounts of information.  The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's -- and defendant's -- cause not be lost in the shadow of a towering mass litigation."  *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992).

In light of the applicable law, separate trials are warranted in order to avoid prejudice.  If the Court decides to decertify the Class, allowing the individual claims to be tried in a collective

manner will inherently prejudice Defendants.   The sheer number of Plaintiffs involved in a consolidated trial may give rise to an impermissible inference amongst the members of the jury that Defendants must have violated the FLSA.  It would be inappropriate for a jury to reach its conclusions in this matter based on the volume of claims instead of the specific facts and law applicable to each claim.

    In addition, as noted above, Defendants would be prejudiced with respect to evidence that would be admissible as it pertains to some Plaintiffs being heard by a jury considering the claims of other Plaintiffs, where such evidence would be inadmissible.  For example, testimony that a particular Plaintiff was told not to report overtime hours may very well be relevant to that Plaintiff's claim, but it cannot be relevant or otherwise admissible with respect to the claims brought by Plaintiffs that did not complete timesheets or that failed to report purported overtime despite not receiving such an instruction.  *See*, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990)  (noting that "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial"); *In re: Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 at 853.

    As a final note, there will be nothing convenient about litigating the individual issues inherent in each Plaintiffs' claim to a single jury.  As set forth above, it is not reasonable to ask a jury to keep straight the individual claims of employees that completed/did not complete timesheets, did/did not report overtime, were/were not instructed to report overtime, signed/did not sign employment agreements, and managed/did not manage.  The jury will not find it convenient to attempt to keep straight and organized the facts pertaining to each individual Plaintiff and how those facts should be interpreted in light of jury instructions.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court decertify the class of opt-in Plaintiffs previously conditionally certified pursuant to 29 U.S.C. § 216 (b) and for such other relief that is just and appropriate.


Dated: March 30, 2012

                                                     _____/s/_____

Ari Karen (*Pro Hac Vice*)
Offit Kurman, P.A.
8171 Maple Lawn Boulevard
Suite 200
Fulton, Maryland 20759
(301) 575-0340
Fax: (301) 575-0355
akaren@offitkurman.com
***Counsel for Defendants***


                                                     _____/s/_____

Russell B. Berger (*Pro Hac Vice*)
Offit Kurman, P.A.
8171 Maple Lawn Boulevard
Suite 200
Fulton, Maryland 20759
(301) 575-0349
Fax: (301) 575-0355
rberger@offitkurman.com
***Counsel for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this  30th  day of March 2012, a copy of the foregoing was served on the following via the Court's electronic filing system, transmitted electronically (justin@nhglaw.com; AFugazy@fugazyrooney.com) to:

> Justin Reilly, Esq.
> Neil H. Greenberg & Associates, P.C.
> 900 Merchants Concourse, Suite 314
> Westbury, NY 11590
> 516-228-5100
> *Attorneys for Plaintiffs*
>
> Amanda M. Fugazy, Esq.
> 126 Glen Street
> Glen Cove, NY 11542
> 516-801-8139
> *Attorney for Defendant Robert Tuzzo*

_____/s/_____
Russell B. Berger
